UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
SUZETTE CIMINELLI and ROBERT CIMINELLI,

                                                                                  AMENDED[1]
                          Plaintiffs,                              MEMORANDUM OPINION
                                                                                 AND ORDER

                                                                                 CV 03-6016 (ETB)

       -against-


KOHL'S DEPARTMENT STORES, INC.,


                          Defendant.
----------------------------------------------------------------------X
KOHL'S DEPARTMENT STORES, INC.,

                          Third Party Plaintiff,


       -against-

SHIRLEY DRIVE-IN ASSOCIATES, L.P.,

                          Third Party Defendant.

----------------------------------------------------------------------X

       Plaintiffs Suzette Ciminelli ("Mrs. Ciminelli") and Robert Ciminelli ("Mr. Ciminelli") commenced the instant negligence action on October 16, 2003 in the Supreme Court of the State of New York, County of Suffolk. The action was removed from state court on November 19, 2003 based on diversity of citizenship. On March 2, 2004, the defendant impleaded third party

---

[1] The sole modification is at page 2 note 1 which incorrectly states that the plaintiffs may proceed against the third party-defendant, notwithstanding plaintiffs' failure to amend the complaint to assert a direct action against that party.

1

defendant Shirley Drive-In Associates ("Shirley Drive-In").

The action arises from an accident that occurred at defendant Kohl's Department Store ("Kohl's") located at the Southport Shopping Center in Shirley, New York. Kohl's impleaded the third party defendant Shirley Drive-In Associates, LP ("Shirley Drive-In"), which owns the Southport Shopping Center where the accident occurred. Plaintiff Suzette Ciminelli alleges that she was injured when she slipped and fell on a puddle inside of the store. Presently before the court are four motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendant Kohl's and third party defendant Shirley Drive-In seek summary judgment against the plaintiffs, asserting that no triable issues of fact exist with respect to any of plaintiffs' claims. See Pilot Air Freight Corp. v. City of Buffalo, No. 91 CV 0308E, 1996 WL 10701, at *2 (W.D.N.Y. 1996) (noting that under Federal Rule of Civil Procedure 14(a), a third-party defendant may assert against the plaintiff any defenses which the third-party defendant, or the the third-party plaintiff, has to the plaintiff's claim, such that "[e]ffectively, a third-party defendant may occupy the shoes of the defendant/third-party plaintiff"); Pinto v. Mickron Indus., Inc., No. 95 Civ. 8979, 1996 WL 572834, at *5 (S.D.N.Y. 1996) (granting third party defendant's motion for summary judgment against plaintiff). Additionally, third party plaintiff Kohl's moves for summary judgment and/or indemnification over and against third party defendant Shirley Drive-In. Third party defendant Shirley Drive-In also moves for summary judgment and /or indemnification over and against third party plaintiff Kohl's.

I.                              FACTS

    A.     Testimony Concerning the Incident

On the afternoon of September 16, 2002, Suzette Ciminelli entered the Kohl's store in

Shirley, New York, accompanied by her three children and her husband. (Suzette Ciminelli Deposition ("Mrs. Ciminelli Dep."), at 11-13.) Mrs. Ciminelli testified that while walking in an aisle between two registers, she slipped and fell to the ground. (Mrs. Ciminelli Dep. at 22-24.) According to her testimony, there were no witnesses to the accident (Id. at 39.) Her husband testified that he had exited the store shortly before the accident occurred. (Robert Ciminelli Deposition ("Mr. Ciminelli Dep.") at 6-7.)

Mrs. Ciminelli testified that she initially thought that a plastic hanger caused her to fall, because when she got up, one of her children said "Mom there's a hanger, you slipped on a hanger." (Mrs. Ciminelli Dep. at 84-85.) Mrs. Ciminelli testified that in response, she said, "No, my pants are wet." (Id. at 85.) She testified that after getting up, she noticed that the seat of her shorts and her legs were wet. (Id. at 29.) Mrs. Ciminelli testified further that she then saw a puddle on the ground less than a foot in size, and that she had not noticed the puddle prior to her fall or prior to realizing that her shorts and legs were wet. (Id. at 84-86.) Mrs. Ciminelli, who testified that she was wearing "between the toe" sandals with one-half inch soles at the time of the accident, did not feel any water on the ground just prior to the accident. (Id. at 37.)

Mrs. Ciminelli testified that after the accident, she told an employee at a register that she had just fallen, and the employee told her to go talk to the store manager who was in the jewelry department. (Id. at 30-31.) Mrs. Ciminelli testified that she then went to speak to Mr. Wilson, an assistant store manager, who accompanied her back to the location of the fall and prepared a report. (Id. at 33-34.) Mrs. Ciminelli testified she told Mr. Wilson that she slipped and fell on a puddle of water on the floor, and she showed him that her shorts were wet. (Id. at 87.) She testified that she and Mr. Wilson then looked at the floor and the ceiling above where she fell,

3

and that she saw a "big brown and moldy spot" that "looked like a little hole." (Id. at 35.) She also testified that it had rained prior to the incident, though she could not remember precisely when. (Id. at 12.)

Robert Ciminelli, who testified that he had been waiting outside the store when the accident occurred, re-entered the store to look for his family and was told by his wife that she slipped and fell on some water. (Mr. Ciminelli Dep. at 8-9.) He testified that when he looked at the ceiling above the place where she fell, he saw "an old spot and a newer spot." (Id. at 10.) He stated that the older spot was "darker in color" than the newer spot, and that the "newer spot was just wet looking." (Id.) He testified that he did not see the water area that his wife was talking about, and that he could not remember if he saw any water actually dripping while he was in the store. (Id. at 11.)

Richard Wilson ("Wilson"), the assistant store manager at the time of the accident, testified that he learned of the accident upon being paged, and that when he arrived at the location where the accident occurred, he saw some water on the floor. (Wilson Dep. at 10-11.) He testified that he believed something was leaking from the ceiling, because there was a wet spot on the ceiling. (Id. at 12-13.) He stated that he did not recall anything actually dripping from the ceiling at the time. (Id. at 13.) Wilson testified that prior to September 16, 2002, he had never noticed the wet spot on the ceiling before, and he had not received a complaint about a leak on the roof or problems with the ceiling. (Id. at 13, 23,26.) Wilson testified that he blocked off the section, notified the operations manager (id.), and filled out an accident report and took photographs of the area where the accident occurred (Id. at 15-19.) The description of the incident in the accident report states: "Customer was walking in-between bays to exit store, and

4

slipped on floor– water had leaked from ceiling– customer fell and landed on butt." (Kohl's Accident Report, dated September 16, 2002, annexed to Pl.'s Mot. at Exh. K.)

Mrs. Ciminelli testified that after the accident, she felt pain in her entire body, in particular her right arm, right shoulder, and lower back. (Id. at 40.) She stated that she went to see her regular doctor, Dr. Cardenas, the day after the accident, and that Dr. Cardenas gave her a prescription and told her to wear an ice-pack and return in one week. (Id. at 42-45.) Mrs. Ciminelli testified that some of the achiness went away, but her shoulder and arm were still bothering her. (Id. at 46-47.) When there was no improvement after three weeks, Dr. Cardenas referred her to a radiologist for x-rays. (Id. at 46-47.) After reviewing the x-rays, Dr. Cardenas referred her to Dr. Finger, an orthopedists at Brookhaven Orthopedics, who treated her with injections. (Id. at 47-48.) Dr. Cardenas also prescribed physical therapy, which she underwent at South Shore Physical Therapy with Dr. Herro. (Id. at 48.) She stopped physical therapy in approximately May 2004, and stated that as of July 2004, Dr. Finger was the only one treating her. (Id. at 57,59.) Mrs. Ciminelli testified that, as of July 2004, her physical complaints were soreness and stiffness in her right shoulder, and soreness in her neck. (Id. at 74.)

B. Testimony Concerning the Property

Shirley Drive-In, which owns the Southport Shopping Center where the Kohl's is located contracts with Lerner-Heidenberg Properties to manage the Southport property. (Deposition of Marc Ruby, dated Jan. 19, 2005 ("Ruby Dep."), at 7-8.)) Marc Ruby, a property manager with Lerner-Heidenberg Properties since 2000 and an agent of Shirley Drive-In, is the individual responsible for handling maintenance issues at the Southport Shopping Center. (Ruby Dep. at 9.) He stated that if a tenant reports a roof leak, he calls a roofing contractor who will make the

repair and then send him an invoice. (Id. at 41-42.) He testified that prior to September 2002, he never inspected the roof of Kohl's nor had any discussions with any Kohl's employees regarding the roof. (Id. at 24.) He testified that, to his recollection, neither he nor the other property manager had ever received any communication from Kohl's with respect to the roof, or regarding leaks from the roof, prior to September 2002. (Id. at 26-27.)

Contrary to Mr. Ruby's recollection, a letter dated June 5, 2003, from Melody Cleaver, a case manager at Helmsman Management Services, Inc.(the managing agent for Kohl's) to Iris Bray, at Fireman's Fund (Shirley Drive-In's insurance carrier), details a history of reported leaks at the Kohl's property in Shirley. (See Letter from Melody Cleaver to Iris Bray, dated June 5, 2003, annexed to Pl.'s Mot. as Exh. L.) The letter outlines leaks at various locations in the store reported for insurance purposes on March 13, 2001, March 30, 2001, and April 20, 2002, in addition to the leak reported on September 16, 2002, referring to the incident herein. (Id.)

II.                         DISCUSSION

       A. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to establish the lack of any factual issues. See id. The very language of this standard reveals that

6

an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The requirement is that there be no "genuine issue of material fact." Id. at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing the summary judgment motion must do more than simply show that "there is some metaphysical doubt as to the material facts." Id. at 586. Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

By its terms, Rule 56 does not require that a judge make any findings of fact. See Anderson, 477 U.S. at 250. The only inquiry to be performed is the determination of whether there is a need for trial. See id. The court's principal analysis on a motion for summary judgment is to ascertain whether there are any "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id.

B. Prima Facie Case of Negligence Under New York Law

This matter is before the Court on diversity jurisdiction: the plaintiffs are citizens of New York, Kohl's is citizen of Wisconsin by virtue of its incorporation there, and the matter in controversy exceeds $75,000. 28 U.S.C. § 1332. The impleading of Shirley Drive-In, a New York corporation, as a third-party defendant does not destroy diversity jurisdiction in this action.

7

See Bank of India v. Trendi Sportswear, Inc., 239 F.3d 428, 436 (finding that subject matter jurisdiction existed in an action where fourth party plaintiff and fourth party defendant were of diverse citizenship and amount exceed $75,000, even though fourth party defendant was not diverse in citizenship from plaintiff to the original action).  See also Caterpillar Inc. v. Lewis, 519 U.S. 61, 67 n.1, 117 S. Ct. 467, 136 L.Ed. 2d 437 (1996) (finding that impleaded third party-defendant's interest run adverse solely to the third-party plaintiff, such that no dispute ran between third-party defendant and the plaintiff, and third-party plaintiff's complaint against the third-party defendant "had no bearing on the authority of the federal court to adjudicate the diversity claims plaintiff asserted against defendant").

When a federal court sits in diversity jurisdiction, it must apply the law of the state in which it sits.  Mehra v. Bentz, 529 F.2d 1137, 1138 (2d Cir. 1976) (relying on Erie v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938)).  Here, the federal court must apply New York law.

1. Duty

Under New York law a prima facie case of negligence is established if "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; (3) the plaintiff suffered damage as a proximate result of that breach."  Stagl v. Delta Airlines, Inc., 52 F.3d 464, 467 (2d Cir. 1995) (citing Solomon v. City of New York, 66 N.Y.2d 1026, 1027, 499 N.Y.S.2d 392, 489 N.E.2d 1294 (1985)).  "It is fundamental that defendants may be liable for failure to correct conditions of which they had knowledge or 'failure to use reasonable care to discover and correct a condition whey [they] ought to have found.'"  Tashjian v. Strong & Associates, 639 N.Y.S.2d 507, 225 A.D.2d 907, 639 N.Y.S.2d 507 (N.Y. App. Div. 3d Dep't

1996) (citing Rogers v. Dorchester Assocs., 32 N.Y.2d 553, 559, 347 N.Y.S.2d 22, 300 N.E.2d 403 (N.Y. 1973)). A landowner has a general duty to maintain his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk. Peralta v. Henriquez, 100 N.Y.2d 139, 144 760 N.Y.S.2d 741(N.Y. 2003).

Liability for a dangerous condition on property is predicated upon ownership, occupancy, control, or special use of the property. Rodriguez v. American Restaurant Ventures, Inc., 923 F. Supp. 598, 601 (S.D.N.Y. 1996) (citing Millman v. Citibank, N.A., 627 N.Y.S.2d 451, 452 (N.Y. App. Div. 1995)). Additionally, an out-of-possession landlord may be held liable for injuries sustained on his premises if it is contractually obligated to perform maintenance and repairs. Seney v. Kee Assoc., 15 A.D.3d 383, 384, 790 N.Y.S.2d 170 (N.Y. App. Div. 2d Dep't 2005).

Here, both Kohl's, as the tenant of the property, and Shirley Drive-In, as the landlord who is contractually obligated to perform certain maintenance and repairs, have a duty of care to members of the public who enter the store. Rodriguez, 923 F. Supp. at 601; Seney, 15 A.D.3d at 384.

2. Notice

On a motion for summary judgment in a negligence action, the defendant is required to make a prima facie showing affirmatively establishing the absence of notice as a matter of law. Grant v. Radamar Meat, 294 A.D.2d 398, 742 N.Y.S.2d 349, 350 (N.Y. App. Div. 2d Dep't 2002). The burden then shifts to the plaintiff to demonstrate the existence of an issue of material fact as to whether the defendant either created the condition which caused the accident, had actual or constructive notice of the condition, or had actual knowledge of a

9

recurring dangerous condition. Id. See also Solazzo v. New York City Tr. Auth, 21 A.D.3d 735, 736, 800 N.Y.S.2d 698 (N.Y. App. Div. 1st Dep't 2005); Galgan v. Allied Staten Island Co., 248 A.D.2d 585, 585, 670 N.Y.S.2d 516 (2d Dep't 1996).

To succeed in showing constructive notice, the plaintiff must demonstrate that the alleged defect was visible and apparent, and that it existed for a sufficient length of time prior to the accident to permit the defendant's employees to discover and remedy it. Id. (citing Gordon v. Museum of Natural History, 67 N.Y.2d 836, 837, 501 N.Y.S. 2d 646 (1986)). Proof that the defendant has a "general awareness" that inclement weather may cause a dangerous condition is insufficient to establish constructive notice of a particular condition which caused a fall. Solazzo v. New York City Tr. Auth, 21 A.D.3d 535. 736, 800 N.Y.S.2d 698 (N.Y. App. Div. 1st Dep't 2005); McDuffie v. Fleet Financial Group, Inc., 703 N.Y.S.2d 510, 510, 269 A.D.2d 575 (N.Y. App. Div. 2d Dep't 2000). However, where a property owner has actual knowledge of the tendency of a particular dangerous condition to recur, he is charged with constructive notice of each specific recurrence of that condition. Solazzo, 21 A.D. 3d at 738. Accordingly, "'it is not necessary that plaintiff prove that the defendant had actual knowledge of the accumulation of rain water on the date of her accident, but merely that the condition was recurring over a period of time with each successive rainfall, thereby putting the defendant on constructive notice of the condition.'" Id. (citing David v. New York City Housing Auth., 284 A.D.2d 169, 171 (2001)).

    C.    <u>Motions for Summary Judgment Against the Plaintiffs</u>

In their moving papers, both Kohl's and Shirley Drive-In argue that plaintiffs have not sustained their burden of proving that the defendants had actual or constructive notice of the alleged leaking water. Kohl's disputes Mrs. Ciminelli's contentions that a puddle of water

caused her to fall, and Kohl's further contends that in the absence of any evidence as to how long the puddle existed prior to plaintiff's fall, there is no evidence to permit an inference that defendant had constructive notice of the condition. (Kohl's Mem. at 4.) (citing Anderson v. Central Valley Realty Co., 300 A.D.2d 422, 751 N.Y.S.2d 586 (N.Y. App. Div. 2d Dep't 2002); Kraemer v. Kmart Corp., 226 A.D.2d 590, 641 N.Y.S.2d 130 (N.Y. App. Div. 2d Dep't 1996); McDuffie, 703 N.Y.S. 2d at 510; Kershner v. Pathmark Stores, 280 A.D.2d 583, 720 N.Y.S.2d 552 (N.Y. App. Div. 2d Dep't 2001); Keum Choi v. Olympia & York Water Street Co., 278 A.D.2d 106, 718 N.Y.S. 2d 42 (1st Dep't 2000)). Shirley Drive-In argues that there is no evidence to indicate that the water on the floor was the cause of Mrs. Ciminelli's fall, and that Mrs. Ciminelli's assertion that she was caused to fall due to the presence of water is speculative. (Shirley Drive-In Mem. of Law in Support 5.) Shirley Drive-In also argues that there is no evidence that either the defendant or the third-party defendant had notice of the condition that allegedly caused plaintiff to fall. (Shirley Drive-In Mem. of Law in Support 3.) (citing Young v. XYZ Corp., 245 A.D.2d 503, 504, 666 N.Y.S.2d 708 (N.Y. App. Div. 2d Dep't 1997); Allen v. Brooks, 246 A.D. 2d 438, 438, 668 N.Y.S. 2d 373 (N.Y. App. Div. 1st Dep't 1998); Piacquadio v. Recine Realty Corp., 84 N.Y.2d 967, 646 N.E.2d 795, 622 N.Y.S.2d 493 (N.Y. 1994)). The cases that Kohl's and Shirley Drive-In rely on do not involve facts controlling the situation presented herein, where an alleged roof leak caused the accident, and where there is evidence that the ceiling above the location of the leak was stained and wet.

  The plaintiffs argue that the record demonstrates that an issue of fact exists as to whether Kohl's and Shirley Drive-In had constructive notice of the leak, or had actual knowledge of the tendency of the ceiling to drip water onto the floor when it rained, such that defendants could be

charged with constructive notice of each specific reoccurrence of the condition. Plaintiffs state that Mr. and Mrs. Ciminelli both testified that they observed water stains on the ceiling above where the incident occurred which were brown or dark in color, and that Mr. Wilson testified he observed a wet spot on the ceiling above where the incident occurred. (Pl.'s Mem. at 2-3.)

Plaintiffs have also submitted a letter dated June 5, 2003, from Melody Cleaver, a case manager at Helmsman Management Services, Inc.(the managing agent for Kohl's) to Iris Bray, at Fireman's Fund (Shirley Drive-In's insurance carrier), details a history of leaks reported to Shirley Drive-In by Kohl's. (Letter from Melody Cleaver to Iris Bray, dated June 5, 2003, annexed to Pl.'s Mot. as Exh. L.) The letter reports that leaks throughout the store were reported on at least three occasions: the first incident of a leak occurred on March 13, 2001 in the stockroom; on March 30, 2001 "leaks in junior's, men's above swimwear, children's shoes, housewear's by dishes, misses above dresses, boys behind clearance banners, domestics above bath, the hallway of stockroom, intimates by junior's, and on the new stock wall butting up to the old part of the building"were reported; on September 16, 2002, a leak at the registers near young men's was reported (Id.) Plaintiff argues that the leak reported on September 16, 2002 near "young men's" was the leak that caused plaintiff's fall. (i.e., that the young men's department is near the front registers).

"The existence of a wet spot, in and of itself, cannot demonstrate the requisite notice," in a negligence case. Andersen v. Park Center Assoc., 250 A.D.2d 473, 473, 673 N.Y.S.2d 396 (N.Y. App. Div. 1st Dep't 1998). However, where plaintiff offers evidence of a water stain on the ceiling from which the alleged leak was coming, "it may be inferred that the leak was of significant duration" to create a genuine issue of material fact as to whether the defendant had

notice of the leak. Id. A plaintiff is not required to submit photographs of the stain in order to make a prima facie showing in support of her claim. Id.

Accordingly, based on the record before the Court, an issue of fact exists as to whether Kohl's and/or Shirley Drive-In had constructive notice of the leak, or whether Kohl's and/or Shirley Drive-In had actual knowledge of a recurring dangerous condition presented by the alleged roof leak, such that defendant could be charged with constructive notice. See Colburn v. ISS Int'l Serv. Systems, 304 A.D.2d 369, 369, 757 N.Y.S.2d 291, 291 (N.Y. App. Div. 1st Dep't 2003) (finding that an issue of fact existed where evidence showed that ceiling above place where plaintiff fell had a brown water stain and a history of leaking); Santiago v. Pyramid Crossgates Co., 294 A.D. 2d 789, 789, 742 N.Y.S. 2d 448, 449 (N.Y. App. Div. 3d Dep't 2002) (finding that an issue of fact existed where numerous leaks had been reported prior to the incident in question in the case); Andersen, 250 A.D.2d at 473 (reversing lower court's decision awarding summary judgment to defendants in a slip and fall case where plaintiff submitted three affidavits asserting that the ceiling around the leak area was stained with yellow and brown marks); Cincotta v. Big V Supermarkets, 564 N.Y.S.2d 235, 168 A.D.2d 818, 819 (N.Y. App. Div. 3d Dep't 1990) (reversing lower court's decision awarding summary judgment to defendants in a slip and fall case where the store manager testified that roof leaks had been reported in the past, such that defendant could be charged with constructive notice).

D. <u>Third Party Plaintiff's and Third Party Defendant's Motions for Summary Judgment Against Each Other</u>

The contract binding third-party plaintiff Kohl's and third-party defendant Shirley Drive-In is a twenty-year lease, effective March 1, 1989 and amended July 31, 1992, between Shirley

Drive-In, as landlord, and Caldor, Inc., as tenant. (Lease between Shirley Drive In and Caldor, Inc., dated as of March 1, 1989 ("Lease Agreement"); See also Lease Amendment between Shirley Drive In and The Caldor Corporation, dated July 31, 1992 ("Lease Amendment").) The parties do not dispute, that Kohl's assumed the lease from Caldor Inc./The Caldor Corporation at some point in 1999. (Ruby Dep., at 12.)

The repairs provision of the lease, Section 11, provides that during the original term of the lease (March 1, 1989 through March 1, 2009) the landlord is required to maintain the roof. (Lease Agreement, § 11(B), at 11-1.) During any extension period elected by the tenant after the original term of the lease, the tenant is required to maintain the roof. (Id. at § 11(A), at 11-1.)

The indemnification provision of the lease, Section 13, provides that

> (A) To the extent the same would not be covered by the insurance required to be provided by Landlord pursuant to Section (C) of Article 9 hereof, and only to said extent, Tenant agrees to save Landlord harmless from, and indemnify Landlord against, any and all injury, loss or damage or claims for injury loss or damage, of whatever nature, to any person or property in the demised premises caused by or resulting from any act, omission or negligence of Tenant or any subtenant or concessionaire of Tenant or any employee or agent of Tenant or any subtenant or concessionaire of Tenant or resulting from any occurrence in, on or about the demised premises. It is a condition of this save harmless and indemnification that Tenant shall receive reasonably prompt notice of any claim against Landlord.

> (B) To the extent the same is not covered or required to be covered by the insurance required to be provided by Tenant pursuant to Section (C) of this Article 13 or the self-insurance provided for under paragraph 13(D), Landlord agrees to save Tenant harmless from, and indemnify Tenant against, any and all injury, loss or damage or claims for injury, loss or damage, of whatever nature, to any person or property caused by or resulting from any act, omission or negligence of Landlord or its employees or agents occurring in the Shopping Center, no matter how caused. It is a condition of this save

14

> harmless and indemnification that Landlord shall receive reasonably
> prompt notice of any claim against Tenant.

(Lease Agreement, at 13-1, 13-2.)

The contract clearly states that if injury arises from "any act, omission or negligence" of the tenant, then the tenant agrees to indemnify the landlord. (Lease Agreement, § 13(A), at 13-1.), Conversely, the contract unambiguously states that if injury arises from "any action, omission or negligence of landlord," then the landlord agrees to indemnify the tenant. (Id., § 13(B), at 13-1- 13-2.)

Under New York law, ordinary contract rules of construction apply to leases, and the plain language of a lease controls its interpretation. George Backer Mgmt. Corp. v. Acme Quilting Co., Inc., 46 N.Y.2d 211, 413 N.Y.S.2d 135, 285 N.E.2d 1062 (1978). A complete, unambiguous contract should generally be enforced according to its terms, with full effect given to the clear intent of the parties. In re Wallace, 86 N.Y.2d 543, 548, 634 N.Y.S. 2d 669 (N.Y. 1995) (citations omitted). Here both parties carry insurance as provided by the terms of the lease. Shirley Drive-In maintained an insurance policy with a limit of $1,000,000.00. (Third Party Def.'s Initial Disclosures ¶ D.) Kohl's maintained a self-insured retention policy in the amount of $250,000.00, and excess coverage in the amount of $750,000.00 per occurrence/$10,000,000.00 aggregate limit. (Def.'s Response to Plaintiff's Notice for Discovery and Inspection ¶ 1.)

Shirley Drive-In disputes compliance with the requirement of the indemnification provisions (see supra, Lease Agreement, Section 13(B)) which requires Kohl's to notify Shirley Drive-In of any claims filed against Kohl's, caused by or resulting from "any act, omission or negligence of Landlord or its employees or agents occurring in the Shopping Center, no matter

how caused." (Id.)  Kohl's contends that it did notify Shirley Drive-In of the claim filed against it.  In support of its argument, Kohl's relies on a letter dated September 18, 2002 from Laurie Tomazevic, Facilities Specialist for Kohl's, to Marc Ruby, property manager for Lerner Heidenberg Properties (Shirley Drive-In's managing company), which states "[c]onfirming our phone conversation of today, there is a roof leak in the young men's department by the register bay, at our store in Shirley, NY." (Pls.' Mot. at Exh. L.)  Kohl's asserts that the leak discussed in this letter is the leak that allegedly caused the plaintiff here to fall.  Kohl's also relies for support on a letter dated June 5, 2003, from Melody Cleaver, a case manager at Helmsman Management Services, Inc.(the managing agent for Kohl's) to Iris Bray, at Fireman's Fund (Shirley Drive-In's insurance), which details a history of reported leaks at the Kohl's property in Shirley, including the incident involved here on September 16, 2002.  (Pls.' Mot. at Exh. L.)

Shirley Drive-In contends that it was not provided with notice of either the specific condition alleged to have caused the incident at issue herein,[2] or of notice of any claims against Kohl's.  (Shirley Drive-In Mem. in Supp. of Def.'s. Mot. for Summary Judgment at 3.)  In support of its argument, Shirley Drive-In relies on the deposition testimony of Marc Ruby, who testified that he did not recall ever receiving any communication from the store with respect to the roof, or regarding leaks from the roof, prior to September 2002.  (Ruby Dep. at 26, 37.) Shirley Drive-In also argues that Kohl's has failed to establish that any accumulation of water resulted from an alleged roof leak, rather than defects in the heating ventilation system, air

---

[2]In its papers, Shirley Drive-In appears to use interchangeably the "notice of claim" requirement set forth in the terms of the lease agreement with the concept of "notice" as a requirement in order to prevail on a claim for negligence.

conditioning system, or other facility condition which Kohl's was responsible for maintaining.[3] (Shirley Drive-In Mem. of Law in Support, at 3.) Shirley Drive-In offers no evidence to support its contention that the water on the floor resulted from defects in the heating ventilation system, air conditioning system, or other facility condition. Kohl's does not specifically address this argument in its briefs, but maintains generally that if negligence is found to exist in this action, "it was due to the failure of third party defendant to properly repair the roof as per the lease." (Kohl's Mem. 7.)

Based on the record before the Court, issues of fact exist as to the cause of the water on the floor, and as to whether Kohl's provided reasonably prompt notice of any claim or claims filed against it to Shirley Drive-In.

Lastly, Shirley Drive-In's invocation of the cross-indemnification against Kohl's, its tenant, has no application here. Plaintiff is not seeking to hold Shirley Drive-In liable in this action. Therefore, the indemnification provision that runs in favor of the landlord, i.e., Section 13(A) of the lease agreement, has no application since Shirley Drive-In is not exposed to any loss in the direct action.

## CONCLUSION

For the foregoing reasons, the motions for summary judgment against the plaintiffs by defendant Kohl's and third party defendant Shirley Drive-In are denied. Furthermore, Kohl's' motion for summary judgment against Shirley Drive-In is denied, and Shirley Drive-In's motion

---

[3]The contract provides that during the original term of the lease, the tenant is required to repair and maintain the interior of the store and such portions of the exterior that landlord is not required to maintain. Tenant's obligation includes the responsibility to maintain and repair, inter alia, the heating and cooling system. (Lease Agreement, § 11(A), at 11-1.)

for summary judgment against Kohl's is denied. Jury selection shall take place on December 5, 2005 at 9:30 a.m. The trial shall commence immediately thereafter.

So Ordered:
Dated: Central Islip, New York
December 8, 2005

                                                     /s/ E. Thomas Boyle
                                                     E. Thomas Boyle
                                                     United States Magistrate Judge